## LYNCH *v.* SOUTHERN EXPRESS COMPANY.

1. An assignment of error in a bill of exceptions from the municipal court of Atlanta to the Court of Appeals, on the direction of a verdict, as not being authorized by the evidence, is insufficient to bring into question the legal power of a judge of the municipal court of Atlanta to direct a verdict.

2. Under the act creating the municipal court of Atlanta (Acts 1913, p. 145) the judge of the DeKalb county section is without power to grant a nonsuit or direct a verdict; but in proper cases in the Fulton county section a judge may grant a nonsuit or direct a verdict.

(a) The foregoing ruling is based on the act creating the court, and not on the amendment of 1916 (Acts 1916, p. 199), which authorizes the judges of the municipal court of Atlanta to grant nonsuits and direct verdicts in the same manner as is exercised by judges of the superior courts.

3. The act creating the municipal court of Atlanta, in so far as it authorizes the direction of a verdict in cases where there is no conflict of evidence, and that introduced, with all reasonable deductions or inferences therefrom, demands a particular verdict, is not repugnant to the constitution of this State, as impairing the right of trial by jury.

4. Where a certified question of law does not propound a distinct issue of law, but in effect calls for a decision of the whole case, this court need not, and in this case does not, answer it.

OCTOBER 20, 1916.

Certified questions; from Court of Appeals (Case No. 6374).

*Neufville & Neufville*, for plaintiff.

*Robert C. & Philip H. Alston*, for defendant.

EVANS, P. J.   In response to questions propounded by the Court of Appeals we answer:

1. An assignment of error to the direction of a verdict for the defendant, that the evidence authorized the submission of the case to the jury, that the contract set up by the defendant was void, and that the verdict directed was contrary to the evidence, does not bring in question the lack of power of the court to direct a verdict because the statute creating the court did not confer on the judges thereof the power to direct a verdict in any case.

2. The act creating the municipal court of Atlanta (Acts 1913, p. 145) provided for a system of courts having territorial jurisdiction over the City of Atlanta. The court was divided into two sections, one having jurisdiction over so much of the county of DeKalb as lay in the City of Atlanta, and the other section was given jurisdiction of so much of the county of Fulton as was embraced in the city. The jurisdiction, procedure, and practice of the DeKalb section is the same as that prescribed for justices of the peace. The jurisdiction, procedure, and practice of the Fulton section are different from that of the DeKalb section. In the 38th section of the act it is provided "that [on] the trial of any civil action in the municipal court of Atlanta [limited to the Fulton county section by section 10], the mode of conducting the trial. the rules of evidence, and the examination and swearing of the jury, where a jury is used, shall be the same as now prevails in the

superior courts of this State." One of the questions propounded by the Court of Appeals concerns the power of the presiding judge to grant a nonsuit or direct a verdict in a pending case. With respect to the DeKalb section, the practice is the same as that prescribed in a justice's court, and the presiding judge can not direct a verdict nor grant a nonsuit. This is so because a justice of the peace has no such power. *Favors* v. *Johnson,* 79 *Ga.* 553 (4 S. E. 925) ; *Gunn* v. *Wood,* 99 *Ga.* 70 (24 S. E. 407) ; *Georgia Railway & Electric Co.* v. *Knight,* 122 *Ga.* 290 (50 S. E. 124). In the Fulton section, however, the mode of conducting the trial is expressly declared to be the same as prevails in the superior courts; and the powers of the presiding judge are more ample. We think the declaration of the statute that the mode of conducting a trial shall be the same in the Fulton county section as that which prevails in the superior courts implies that the power to grant a nonsuit and to direct a verdict inheres in the presiding judge of the municipal court of Atlanta. This implication becomes more apparent when we consider the rationale of the rule which forbids a justice of the peace to grant a nonsuit or direct a verdict. An appeal in a justice's court is a de novo investigation, and, as was said in *Favors* v. *Johnson,* supra: "The jury in a justice's court is designed to fill the magistrate's place, or rather to succeed him, in judging of the sufficiency of the evidence." This is not so in the procedure of the Fulton county section of the municipal court of Atlanta. The trial before a jury is one of first instance, and is not on appeal; and hence the reason for denying to the judge the exercise of powers usual to a trial in the superior court in the matter of granting nonsuits and directing verdicts is absent. We could further elaborate our position by an analysis of the statute creating the court, but forbear to do so, because we feel convinced of the accuracy of our construction, and for the further reason that since this case arose the General Assembly has settled the matter by enacting "that upon the trial of any civil case in the municipal court of Atlanta, the judge shall have the same power and authority to grant a nonsuit, or direct a verdict, or order a mistrial as is now conferred upon and exercised by the judges of the superior courts of this State." Acts 1916, p. 202.

3. This court is further asked, if the statute be given the construction put upon it by us, is the statute unconstitutional as deny-

ing a trial by jury? This question is answered in the negative. *Tilley* v. *Cox,* 119 *Ga.* 867 (2), 870 (47 S. E. 219); *Price* v. *Central of Georgia Railway Co.,* 124 *Ga.* 899 (2) (53 S. E. 455).

4. Two cases are named in the caption of the certified question, having no relation to each other. One of the questions propounded is as follows: "If the judge of the municipal court of Atlanta was empowered, under the law, to direct a verdict, was the verdict properly directed under the pleadings and evidence in each of these cases?" The cleavage of jurisdiction between the Supreme Court and the Court of Appeals is well defined. Within the sphere of their respective jurisdictions each court is a court of last resort. The decisions of the Supreme Court are binding as precedents on the Court of Appeals. Where there are two courts of last resort in a State, every safeguard should be used to avoid conflicts of decision. With a view of preserving uniformity of decision, the constitution provides for the certifying of constitutional questions to the Supreme Court, and further provides that "The Court of Appeals may at any time certify to the Supreme Court any other question of law concerning which it desires the instruction of the Supreme Court for proper decision; and thereupon the Supreme Court shall give its instruction on the question certified to it, which shall be binding on the Court of Appeals in such case. The manner of certifying questions to the Supreme Court by the Court of Appeals, and the subsequent proceedings in regard to the same in the Supreme Court, shall be as the Supreme Court shall by its rules prescribe, until otherwise provided by law." Constitution of Georgia, art. 6, sec. 2, par. 9 (Civil Code of 1910, § 6506). Two features stand prominent in this constitutional provision: one is that the question certified is to be one of law; and the other is that the purpose of the certification is to settle the question of law for application by the Court of Appeals in a "proper decision" of the case by them. There can be no doubt that the words, "question of law," as used in the constitution, considered abstractly or in connection with the context, were not intended to embrace questions of fact, or mixed questions of law and fact; the manifest object being to submit to the Supreme Court a definite question of law. The propriety of granting a nonsuit or of directing a verdict depends upon the effect to be given the evidence. Hardly in any case, and certainly in no case where there is doubt whether

a particular ultimate conclusion of fact is demanded by the evidence, do all of the criteria necessary for decision appear to rest upon such facts only as are expressly proved as distinct occurrences, events, or things. Many of the constituent facts which are proved authorize inferences and oftentimes cross-inferences. The Civil Code of 1910, § 5926, declares that a verdict can not be directed unless the evidence introduced, with all reasonable deductions or inferences therefrom, demands a particular verdict. In order to test the propriety of directing a verdict the court must go through the process of analyzing the evidence and draw all reasonable deductions therefrom. We do not think it was ever intended that the burden of doing this in cases pending before the Court of Appeals should be transferred to the Supreme Court.

A similar question was presented to the United States Supreme Court in the construction of an act of Congress which authorized the judges of the Circuit Court of Appeals in any civil suit or proceeding before it, where they were divided in opinion, to certify to the Supreme Court the point upon which they so disagreed. The Supreme Court of the United States, speaking through Mr. Justice Gray, held that each question certified must be a distinct question or proposition of law clearly stated, so that it could be definitely answered without regard to other issues of law or of fact in the case. He said: "The points certified must be questions of law only, and not questions of fact, or of mixed law and fact—'not such as involve or imply conclusions or judgment by the court upon the weight or effect of testimony or facts adduced in the cause.' . . The whole case, even when its decision turns upon matter of law only, can not be sent up by certificate of division." Jewell *v.* McKnight, 123 U. S. 426 (8 Sup. Ct. 193, 31 L. ed. 190) ; Chicago &c. Ry. *v.* Williams, 205 U. S. 444, 452 (27 Sup. Ct. 559, 51 L. ed. 875) ; The Folmina, 212 U. S. 354 (29 Sup. Ct. 363, 53 L. ed. 546, 15 Ann. Cas. 748) ; U. S. *v.* Mayer, 235 U. S. 55 (35 Sup. Ct. 16, 59 L. ed. 129).

Moreover, the constitutional provision under which the certification of a question of law by the Court of Appeals to the Supreme Court is authorized limits the "question of law" to one which the Court of Appeals desires the Supreme Court's instruction for a "proper decision" of the case by the Court of Appeals. There is no suggestion, either in phraseology or context, that it was ever

contemplated that the Court of Appeals could certify for ultimate decision by the Supreme Court the whole case of any record depending in that Court. If one case could be so certified, then all of the cases in that Court could be certified for ultimate decision by the Supreme Court. We therefore conclude that no question of law is presented in the question, the formula of which is given at the beginning of this division of the opinion.

*All the Justices concur.*