18086.  HARRISON *v.* CENTRAL OF GEORGIA RAILWAY COMPANY.

Decided February 27, 1929.

*B. F. Neal,* for plaintiff.

*Felton & Felton, H. A. Wilkinson,* for defendants.

Stephens, J.  Except where the size, length, weight, and character of railroad-trains when in operation, and the speed at which the trains are operated, are prohibited by law, or where, under the circumstances of a particular case, the operation of a railroad-train is in fact negligence, the railroad company may lawfully and without being guilty of negligence operate trains of any size, length, weight, and character, and at the highest rate of speed attainable. The vibrations caused from and communicated by large, long, and ponderous trains, moving along a railroad-track at the fastest rate of speed, are necessary and legitimate incidents of the operation of these trains, and where their operation is not prohibited by law, and where, under the circumstances of the particular case, the railroad company owes no duty to any one to operate the trains in such a manner as to curtail the vibrations, it is not chargeable with negligence because of the vibrations, and is therefore not guilty of negligence in fact in failing to curtail them.  *Georgia Railroad & Banking Co.* v. *Maddox,* 116 *Ga.* 64 (4) (42 S. E. 315) ; *Central Georgia Power Co.* v. *Ham,* 139 *Ga.* 569, 573 (77 S. E. 396) ; Galveston &c. Railway Co., *v.* DeGroff, 102 Tex. 433 (118 S. W. 134, 21 L. R. A. (N. S.) 749) ; Roman Catholic Church *v.* Pennsylvania Railroad, 125 C. C. A. 629 (207 Fed. 897, L. R. A. 1915E, 623) ; 6 A. L. R. 723 (note).

Since an owner of property must use and enjoy it with due regard and consideration for the rights of others, a person owning a building situated near a railroad-track is not, in the use and the maintenance of the building, entitled to curtail the right of the railroad company to the lawful use of its own property in the operation of large, long, and ponderous trains at the highest attainable speed and with such necessary resulting vibrations therefrom as accompanies their lawful use when moving. The railroad company therefore owes no duty to a near by property owner to curtail the lawful use of its trains and reduce the vibrations arising from their lawful operation so as to prevent damage caused by such vibrations to a building and other property near the track of the railroad company over which the trains are operated.

The negligence arising as a matter of law from an act done in violation of a statute is negligence only as respects persons within the purview of the statute and whom the statute is designed to protect. The act of 1918 (Ga. L. 1918, p. 212), which supersedes §§ 2675-2677 of the Civil Code, relied on by counsel, in so far as it limits the speed of trains, applies only when they are approaching crossings, and is designed to protect people from injury to person and property only when using the crossings. The protection of the owner of a house, located near the railroad-track and at the crossing, from damage to the house and property in it, resulting from vibrations arising from the operation of the trains when approaching a crossing, is not within the purview of this statute, and the operation of a train when approaching a crossing at a speed prohibited by the statute is not negligence as respects the owner of the house in his right to protection from damage to his house and other property from the negligent or unlawful acts of another.

An ordinance of a city which generally regulates the speed of railroad-trains within the limits of the city, and which does so without restriction as to particular situations or localities, is designed to protect people not only from physical injuries to themselves and property resulting from actual physical contact with railroad-trains operated through the city, but is designed to protect people from all injuries whatsoever resulting from an act of the railroad company in operating its trains in violation of this ordinance. The owner of a house situated in the city near the tracks

of the railroad company is within the protection of this ordinance as respects any damage to his house and the property in it proximately resulting from the vibrations of passing trains which are being operated at a rate of speed prohibited by this ordinance. Where the house is damaged by being shaken and loosened and caused to be rendered insecure and to fall to pieces, and personal property in the house is damaged as the proximate result of vibrations caused by the trains running past the house at a rate of speed of forty miles per hour and more, which is in violation of an ordinance of the city prohibiting the operation, in the city of trains at a speed exceeding five miles per hour, the owner of the house has a right of action against the railroad company for the damage thus sustained.

Where a house adjacent to a railroad-track is not so firmly and securely constructed as to withstand damage from vibrations from passing trains operated at a legally permitted speed, damage to the house caused by the vibrations of passing trains which are operated at a speed prohibited by law is not proximately caused by the operation of the trains at such prohibited speed.

In a petition in a suit against a railroad company to recover for damages alleged to have been sustained by the plaintiff arising from the falling to pieces of his house situated near the railroad-track, and within about seventy feet of the track, caused from the vibrations from passing trains of the defendant while being operated at a rate of speed prohibited by an ordinance of the city in which the house is located, an allegation that the vibrations caused by the operation of the trains at a speed of forty miles and more per hour, and therefore in excess of the speed permitted by the ordinance, necessarily implies that the house was so constructed as not to be affected by the vibrations caused by the operation of the trains within the limitations of the speed permitted by the ordinance. A ruling that an allegation in the petition that the house was damaged by vibrations caused by the operation of the trains at a speed in excess of that permitted by the ordinance necessarily implies that the house was so constructed as not to be affected by the vibrations caused by the operation of trains within the limitations of the speed permitted by the ordinance is not in conflict with the ruling by the Supreme Court, in response to a certified question in this case propounded to it by this court, where that court held that

it would be necessary to answer a question of fact as to whether the house was so constructed as to be able to withstand and not be damaged from the trains when run at the lawful speed permitted by the ordinance, in answering a certified question as to whether there was a cause of action against the railroad company in favor of the owner of the house for damage to the house sustained as a proximate result of the operation of the defendant's trains at a rate of speed in excess of that permitted by the ordinance. See 167 *Ga.* 677 (146 S. E. 317).

There being no demurrer to the petition upon the ground that it fails to allege that the building damaged by the vibrations of passing trains was so constructed as to resist being damaged by the vibrations of passing trains when operated at a speed permitted by the ordinance, and since an allegation to the effect that the damage to the house from vibrations of passing trains was proximately caused by the operation of the trains at a speed of forty miles or more per hour, which is in excess of five miles per hour permitted by the ordinance, necessarily implies that the house was constructed so as not to be affected by vibrations caused from the operation of the trains at a speed permitted by the ordinance, the petition as amended is not subject to either general or special demurrer because of failure to allege in effect that the house was so constructed as not to be affected by vibration caused from the operation of the trains at a speed permitted by the ordinance.

It is conceivable that the owner of a house situated near a railroad track in a city may, in constructing the house, reasonably anticipate that the railroad company will operate its trains through the city at a rate of speed in excess of five miles an hour, although in violation of an ordinance of .the city prohibiting the operation of trains through the city at a speed greater than five miles an hour, and that, in failing to construct his house so that damage as a consequence of the railroad's negligence in operating its trains by the house in violation of the ordinance will be avoided, he would be guilty of negligence that as a matter of law, would bar a recovery from the railroad company for damage to the house caused by vibrations of passing trains operated at a rate of speed in excess of five miles per hour in violation of the ordinance. It, however, can not be held as a matter of law that the owner of the house, when constructing it, could reasonably have anticipated that the

railroad company would afterwards operate through the city at a rate of speed of forty miles per hour or more, in violation of the ordinance, long and ponderous trains of the character referred to and alleged in the petition, and that the failure of the owner of the house to construct it so as to withstand damage from the vibrations of trains of the character described, when running through the city and past the house at a rate of speed of forty miles per hour, or more, in violation of the ordinance, was negligence as a matter of law and bars a recovery by him against the railroad company for damage sustained from the vibrations of trains when operated through the city past his house at a rate of speed of forty miles per hour and more in violation of the ordinance of the city.

In a suit by the owner of the house against the railroad company, to recover damages to the house and the personal property in it, where it is alleged in the petition that the house was located in a city and within about seventy feet from the railroad-tracks, and that the house and personal property in it were damaged in a described manner and in a certain amount by the vibrations from the continuous operation by the house of trains of the character described at a speed of forty miles per hour and more, in violation of a valid ordinance of the city, the petition as amended sets out a cause of action, and is good as against a general demurrer.

The ground of demurrer that the allegation in the petition as amended "which referred to the ordinance of the city, set forth no reason why the plaintiff should recover," and that "said allegation is bad further in that the same is an effort to regulate, interfere with, and affect interstate commerce, and is therefore illegal," can not be taken as a demurrer attacking the validity of the alleged ordinance prohibiting the operation of trains throughout the city at a speed in excess of five miles per hour, as being unreasonable.

It not appearing from the petition that the trains operated by the defendant railroad company through the city were engaged in interstate commerce, there was no basis in fact for that ground of the demurrer which attacks the ordinance as illegal in that it regulates, interferes with, and affects interstate commerce.

The petition as amended, in alleging that the trains of the defendant which were operated past the plaintiff's house were trains of the defendant denominated as "The Flamingo," "Southland," "Dixie Limited," and "Dixie Flyer," and indefinitely other fast

and through trains, is sufficiently specific as pointing out what trains of the defendant were operated past the plaintiff's house, and in alleging that, "beginning about 1923 and continuing until during the year 1926," these trains were operated past the plaintiff's house at a speed prohibited by the ordinance of the city and at forty miles an hour sufficiently alleges when and at what speed the trains were so operated. The petition also sufficiently alleges the manner in which the house was damaged as a result of the vibrations of the passing trains. The petition was otherwise good against the special demurrers. The court erred in sustaining the demurrers and in dismissing the petition.

Certain questions in this case were by this court certified to the Supreme Court on March 3, 1928, and that court, after refusing to answer the certified questions, returned the case to this court on January 29, 1929. See *Harrison* v. *Central of Georgia Ry. Co.*, supra.

*Judgment reversed. Jenkins, P. J., and Bell., J., concur.*